```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
QUAYSEAN CANNONIER,                                          :
                                        Plaintiff,           :
                                                             :
                    -against-                                :
                                                             :
WARDEN SKIPPER-SCOTT, et al.,                                :
                                        Defendants.          :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/20/2019

18 Civ. 2383 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff Quaysean Cannonier brings this action against Shirley Skipper-Scott, Jossam Georgy, Rosa Proto, Kiet Vuong, Leslie McPherson-Anderson and Krishna Ajarie ("Defendants") who are Federal Bureau of Prisons ("BOP") Officers,[1] stemming from a head wound Plaintiff sustained when stabbed by another inmate. The Complaint is construed to raise claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"). Defendants move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), 12(b)(6). For the reasons described herein, the motion is granted.

---

[1] The Complaint also names as a Defendant the "Director of Brooklyn First Hospital." In the April 13, 2018, Order the Court stated:

> The Court declines at this stage to issue a Valentin order as to the hospital director. Plaintiff fails to provide sufficient detail about who this individual is and what his role was in what occurred. When Plaintiff files an amended complaint to add the names of the correction officers, he may provide more information about the hospital director. The Court will reconsider the matter at that time.

Plaintiff did not provide more information, and thus the Director of Brooklyn First Hospital was not served. As this Defendant was not served within 90 days after the complaint was filed and Plaintiff was provided an opportunity to provide more information about the hospital director but failed to do so, the Director of Brooklyn First Hospital is dismissed from this action pursuant to Rule 4(m), Fed. R. Civ. P.

## I. BACKGROUND

The facts are taken from the Complaint and Plaintiff's opposition to the motion to dismiss, and, as required on a motion to dismiss, these facts are accepted as true and construed in the light most favorable to Plaintiff. *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017); *see also Coke v. Med., Dep't of Corr. & Cmty. Supervision*, No. 17 Civ. 0866, 2018 WL 2041388, at *1 n. 2 (S.D.N.Y. Apr. 30, 2018) ("[W]hen a *pro se* plaintiff's opposition memoranda raises new allegations that are consistent with the allegations in the Complaint, these allegations may be read as supplements to th[e] pleadings.") (some alteration in original) (internal quotation marks omitted).

### A. The Stabbing and Subsequent Medical Treatment

In September 2016, Plaintiff was a pre-trial detainee at the Metropolitan Correctional Center ("MCC") in the Unit 11 North housing unit. On September 1, 2016, Defendants Vuong, McPherson-Anderson and Ajarie conducted a general search of Unit 11 North for weapons and contraband. Vuong, McPherson-Anderson and Ajarie failed to find a weapon kept by Joan Vasquez, an inmate. On September 2, 2016, Vasquez used the weapon to stab Plaintiff in the head. Ajarie was present for the attack but did not help Plaintiff or intervene. Plaintiff's wound caused heavy bleeding, and Plaintiff passed out as he tried to seek medical attention.

When Plaintiff awoke, he was being taken to Brooklyn First Hospital. At the hospital, Plaintiff did not receive an MRI or X-ray.

Once Plaintiff returned to MCC, he was put in the "box" -- a special housing unit -- for 90 days even though no disciplinary charges were filed against him. Although Plaintiff requested medical attention for his terrible pain, he did not receive medical care for a week. At that time, he was given an MRI and X-ray.

### B. Grievance Attempt

Plaintiff requested a BP-8 form (for an informal resolution) from Defendant Proto who has been a BOP Officer for at least ten years. However, Proto knowingly gave Plaintiff a BP-9 form (a formal written complaint). Plaintiff's completed BP-9 form includes allegations of improper medical care because no MRI or X-ray was performed, but does not contain information about the other claims raised in the Complaint. Plaintiff's BP-9 was received on October 27, 2016, and rejected on October 28, 2016. The rejection notice states that the BP-9 was rejected because Plaintiff did not attempt, or provide evidence of an attempt at, informal resolution (i.e. a BP-8 form). The notice, which is attached to the Complaint, explains that Plaintiff must first attempt informal resolution and that Plaintiff had five days to submit a proper form.

## II. LEGAL PRINCIPLES

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

In order to survive a motion to dismiss under Rule 12(b)(1), "the plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *Katz v. Donna Karan Co.*, 872 F.3d 114, 120 (2d Cir. 2017). All material allegations in the Complaint are accepted as true, however, "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); *accord Lucas v. Fed. Bureau of Prisons*, No. 17 Civ. 1184, 2018 WL 3038496, at *2 (S.D.N.Y. June 19, 2018). In considering a Rule 12(b)(1) motion, a court may rely on evidence outside the pleadings. *Moser v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002); *accord Raymond Loubier Irrevocable Tr.*, 858 F.3d at 725.

## B. Motion to Dismiss for Failure to State a Claim

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (internal quotation marks omitted). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## C. Pro se Pleadings and Briefs

Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted). "The policy of liberally construing pro se submissions is driven by the understanding that implicit in the right to self-representation is an obligation . . . of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* at 156–57 (internal quotation marks omitted). "We afford a pro se litigant special solicitude by interpreting a complaint filed pro se to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotation marks omitted).

## III. DISCUSSION

The Complaint is construed to raise an FTCA claim for negligence in failing to find the weapon and *Bivens* claims for denying access to the grievance process, failure to protect against an inmate's assault, improper placement in a special housing unit, and deliberate indifference to a serious medical need. For the following reasons, the motion to dismiss is granted.

### A. FTCA Claim

The Complaint raises a negligence claim against Defendants Vuong, McPherson-Anderson and Ajarie for failing to find the weapon used to stab him during their search of Plaintiff's housing unit. As explained below, the United States is substituted as the named Defendant for Plaintiff's FTCA negligence claim, and the claim is dismissed for lack of subject matter jurisdiction. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived."); *accord Shariff v. United States*, 689 F. App'x 18, 20 (2d Cir. 2017) (summary order); *Davila v. Gutierrez*, 330 F. Supp. 3d 925, 936 (S.D.N.Y. 2018).

#### 1. Substituting the United States as the Named Defendant

The FTCA provides a limited waiver of sovereign immunity for claims "arising from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 2679(b)(1). "The only proper defendant to a tort claim under the FTCA is the United States." *Skyers v. Sommer*, No. 12 Civ. 3432, 2016 WL 4484241, at *7 (S.D.N.Y. Aug. 23, 2016) (citing *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991)).

"The FTCA provides that upon certification by the Attorney General that an employee was acting within the scope of his office or employment when he committed the allegedly negligent act, the United States shall be substituted as the defendant in place of the employee, and the FTCA shall be the exclusive remedy for any action or claim arising out of the negligent act." *Fountain v. Karim*, 838 F.3d 129, 133 n.3 (2d Cir. 2016). Because the United States has certified that Defendants Vuong, McPherson-Anderson and Ajarie were acting within the scope of their employment in conducting searches of Plaintiff's unit on September 1, 2016, the United States is substituted as the named Defendant for Plaintiff's FTCA claim for the negligent failure of Defendants Vuong, McPherson-Anderson and Ajarie to find the weapon that was used to stab Plaintiff.

### 2. Failure to Exhaust

Under the FTCA, a plaintiff must exhaust administrative remedies prior to bringing a tort claim against the United States. The FTCA states in relevant part:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first *presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing* . . . .

28 U.S.C. § 2675(a) (emphasis added). The exhaustion requirement is "strictly construed." *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999); *accord Bright-Asante v. Wagner*, No 15 Civ. 9110, 2017 WL 6948359, at *9 (S.D.N.Y. Dec. 1, 2017). A plaintiff bears the burden to "'plead and prove compliance with the [exhaustion] requirements' of the FTCA." *Bright-Asante*, 2017 WL 6948359, at *9 (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)). Where a plaintiff fails to exhaust his administrative remedies, the district

6

court lacks subject matter jurisdiction over the FTCA claims. *See Celestine*, 403 F.3d at 82; *accord Davila*, 330 F. Supp. 3d at 936.

The FTCA claim for the negligent failure to find the weapon that was used to stab Plaintiff is dismissed because the Court lacks subject matter jurisdiction. The Complaint alleges no facts to show that a sufficient administrative claim was filed with an appropriate federal agency as required under the FTCA. *See, e.g.*, *Page v. Oath Inc.*, No. 17 Civ. 6990, 2018 WL 1406622, at *4 (S.D.N.Y. Mar. 20, 2018); *Bright-Asante*, 2017 WL 6948359, at *9 (dismissing FTCA claim where plaintiff "wholly fail[ed] to plead the filing of an administrative claim with the [relevant agency]").

**B.** ***Bivens*** **Claims**

In *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

A two-step process determines whether a *Bivens* remedy is available for an alleged constitutional injury. First, a court must determine if there is a recognized *Bivens* action encompassing that claim. *Ochoa v. Bratton*, No. 16 Civ. 2852, 2017 WL 5900552, at *6 (S.D.N.Y. Nov. 28, 2017) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)) ("Because 'the [Supreme] Court has made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity,' when confronted with claim under *Bivens*, a district court must first determine whether a *Bivens* action encompassing that claim has already been recognized, or whether the claim presents a potentially new context."). "The Supreme Court has recognized a *Bivens* action in only three contexts: (1) an unreasonable search and seizure in violation of the Fourth Amendment, (2) employment discrimination in violation of the Due Process Clause of the Fifth

7

Amendment, and (3) failure to treat an inmate's medical condition in violation of the Eighth Amendment." *Modest Needs Found. v. Bianco*, No. 16 Civ. 3144, 2017 WL 3130416, at *9 (S.D.N.Y. July 21, 2017) (internal citations omitted). "The proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar*, 137 S. Ct. at 1859. The Supreme Court has provided some examples of ways in which a case "might differ in a meaningful way" including:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. Although "the new-context inquiry is easily satisfied," the Supreme Court has recognized that "[s]ome differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context." *Id.* at 1865.

Second, if the claim arises in a new context, a court must consider whether there are special factors counseling hesitation in creating a *Bivens* remedy. *Id.* at 1857. The question of what special factors counsel hesitation "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action or proceed." *Id.* at 1857–58. "Thus, to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1858. "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

8

### 1. Denying Access to the Grievance Process

The Complaint is construed to include a claim against Defendant Proto for denying access to the grievance system. The Complaint states that Defendant Proto intentionally gave Plaintiff a BP-9 instead of a BP-8 for informal resolution, so that Plaintiff's BP-9 form would be rejected, which the Court assumes to be true for purposes of this motion and does not condone. But this does not state a *Bivens* claim because there is no constitutional right to the grievance process. *See, e.g.*, *Conquistador v. Adimitis*, No. 18 Civ. 1240, 2018 WL 6344187, at *2 (D. Conn. Dec. 5, 2018) ("[P]risoners do not have a due process right to a thorough investigation of grievances.") (internal quotation marks omitted); *Young v. Tryon*, No. 12 Civ. 6251, 2015 WL 309431, at *14 (W.D.N.Y. Jan. 23, 2015), *report and recommendation adopted*, 2015 WL 554807 (W.D.N.Y. Feb. 11, 2015) ("[T]he law is clear that [inmates] ha[ve] no constitutional right to have [their] grievances processed at all, or if processed, to have the procedure done properly.") (alternation in original) (internal quotation marks omitted). The denial of access to the grievance process claim is dismissed.

### 2. Failure to Protect and Improper Placement in a Special Housing Unit

The Complaint is construed to include a claim for failure to protect based on the allegation that Ajarie was present during the attack on Plaintiff but did not help Plaintiff or intervene. *See Poulos v. City of New York*, No. 14 Civ. 3023, 2015 WL 5707496, at *6 (S.D.N.Y. Sept. 29, 2015) ("'Where a prison inmate has alleged that he was not protected by prison officials, this court has recognized that an inmate who is injured as a result of a prison official's deliberate indifference to his safety may maintain a damage action for the deprivation of his civil rights under the Eighth and Fourteenth Amendment.'") (quoting *Snider v. Dylag*, 188 F.3d 51, 54 (2d Cir. 1999)). The Complaint is also construed to include a claim for

9

improper placement in a special housing unit based on the allegation that Plaintiff was placed in a special housing unit for 90 days even though no disciplinary charges were filed against him. *See Smith v. New York State Dep't of Corr. Servs.*, No. 15 Civ. 3455, 2018 WL 2305566, at *4 (S.D.N.Y. May 21, 2018) ("A prisoner's liberty interest may be implicated by [special housing unit] confinement only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (some alteration in original) (internal quotation marks omitted)).

These claims are dismissed. First, both claims present a new *Bivens* context. The Supreme Court has recognized only three *Bivens* contexts, none of which include failure to protect or improper placement in a special housing unit. Second, there are special factors that counsel against expanding a new *Bivens* remedy, including the availability of alternative relief (the BOP administrative grievance process and habeas corpus) and Congress's legislation in the area of prisoners' rights. *See Ziglar*, 137 S. Ct. at 1865 (noting that post-*Carlson*, "Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court [without providing for a standalone damages remedy against federal jailers]," therefore "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs") (internal citation omitted). As a result, there is no *Bivens* remedy for failure to protect or improper housing. *See Turkmen v. Ashcroft*, No. 02 Civ. 2307, 2018 WL 4026734, at *13 (E.D.N.Y. Aug. 13, 2018) (collecting cases); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 61 (E.D.N.Y. 2017), *aff'd*, No. 17 Civ. 3790, 2018 WL 5960773 (2d Cir. Nov. 14, 2018) (declining to extend a *Bivens* remedy for confinement in special housing unit). The failure to protect claim and improper placement claim are dismissed.

### 3. Deliberate Indifference to a Serious Medical Need[2]

The Complaint is construed to include a claim for deliberate indifference to a serious medical need against Defendants Skipper-Scott and Georgy.[3]

To assert a viable constitutional claim for deliberate indifference to a serious medical need, a plaintiff must plead facts showing that (1) the deprivation of medical care is objectively "sufficiently serious" in light of a medical condition "that may produce death, degeneration, or extreme pain," *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and (2) "the defendant-official . . . intentionally . . . or recklessly failed to act with reasonable care . . . even though the

---

[2] Defendants argue that it is clear from the face of the Complaint that Plaintiff failed to exhaust his administrative remedies for his *Bivens* claims for deliberate indifference to a serious medical need. This argument is unpersuasive. Since "failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act], . . . inmates are not required to specially plead or demonstrate exhaustion in their [*Bivens*] complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Nevertheless, "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). Here, it is not clear on the face of the Complaint that Plaintiff failed to exhaust his administrative remedies. The Complaint attaches Plaintiff's BP-9 form and the response dated October 28, 2016, rejecting Plaintiff's BP-9 form because Plaintiff did not provide evidence that he attempted an informal resolution (i.e. a BP-8 form) before submitting his BP-9 form. The Complaint states that because of Proto's actions, Plaintiff could not exhaust his administrative remedies and his only recourse was to file this action over a year later. It is unclear what administrative remedy steps Plaintiff may have taken between receiving the notice and filing this action. Because Plaintiff is not required to plead exhaustion in the Complaint on a *Bivens* claim, the deliberate indifference to a serious medical need claim is not dismissed for failure to exhaust administrative remedies. *See, e.g.*, *White v. Westchester Cty.*, No. 18 Civ. 730, 2018 WL 6726555, at *9 (S.D.N.Y. Dec. 21, 2018) (declining to dismiss a complaint for failure to exhaust administrative remedies where the plaintiff submitted evidence that he attempted to comply with two of four administrative remedy steps).

[3] Defendants do not question whether a Fifth Amendment *Bivens* remedy for deliberate indifference to a serious medical need exists after *Ziglar*; for the purposes of this motion, its existence is assumed. *See Morgan v. Shivers*, No. 14 Civ. 7921, 2018 WL 618451, at *7 n.4 (S.D.N.Y. Jan. 29, 2018) ("The Court notes that, even in light of the proscription against creating new *Bivens* remedies, it would be counterintuitive if a convicted prisoner could remedy a federal officer's failure to provide medical care amounting to punishment, but a pre-trial detainee—who, 'unlike convicted prisoners[,] cannot be punished at all,' could not. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2475 (2015).") (alteration in original).

defendant-official knew, or should have known," that the alleged medical condition "posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Hill*, 657 F.3d at 122–23.

A plaintiff must plead "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious' -- that is, . . . that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks omitted). "Because '[t]he objective component . . . is . . . [necessarily] contextual' and fact-specific, the serious medical need inquiry must be tailored to the specific circumstances of each case." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (alterations in original) (internal citation omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Non-medical personnel may be deliberately indifferent by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.*; *Wright*, 412 F.3d at 404 (citing *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)) ("[A] deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians."). Still, "a plaintiff must prove that [nonmedical] prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment." *Roundtree v. City of New York*, No. 15 Civ. 8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018) (alteration in original) (internal quotation marks omitted).

For individual liability to attach, *Bivens* defendants -- even those in supervisory positions -- must be personally involved such that "through their own actions, they satisfy each element of the underlying constitutional tort." *Turkmen v. Hasty*, 789 F.3d 218, 250 (2d Cir. 2015), *rev'd on other grounds*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1869 (2017); *see also Gonzalez v. Hasty*, No. 17 Civ. 3790, 2018 WL 5960773, at *4 (2d Cir. Nov. 14, 2018) (summary order) ("A *Bivens* plaintiff cannot rely on *respondeat superior* to establish the liability of defendants; instead, he must prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (internal quotation marks omitted).

The Complaint does not plausibly allege a claim for deliberate indifference to a serious medical need against Defendants Skipper-Scott and Georgy because Skipper-Scott and Georgy appear only in the caption of the Complaint. The Complaint contains no allegations that Skipper-Scott or Georgy knew of -- or acted with deliberate indifference to -- Plaintiff's severe medical condition. The deliberate indifference to a serious medical need claim is accordingly dismissed. *See Calix v. Fed. Bureau of Prisons*, No. 18 Civ. 3980, 2018 WL 3518509, at *2 (E.D.N.Y. July 20, 2018) (dismissing a *Bivens* claim against a defendant where the only mention of defendant was the caption of the complaint).

### C. Leave to Replead

Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a). "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). Leave to amend also may be denied where the plaintiff "fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v.*

*Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Any motion for leave to replead shall be filed as provided below.

If Plaintiff believes that he can sufficiently replead the FTCA claim against the United States or deliberate indifference to a serious medical need claim against Defendants Skipper-Scott and Georgy, he may file a letter (by filing it with the Pro Se Intake Office), not to exceed three, single-spaced pages, describing how he would amend the Complaint to cure the deficiencies described in this Opinion -- including (1) for an FTCA claim, how Plaintiff has exhausted all necessary administrative remedies prior to bringing such a tort claim against the United States; (2) for a deliberate indifference to a serious medical need claim against Skipper-Scott and Georgy, how Skipper-Scott and/or Georgy knew or should have known of Plaintiff's severe medical condition and what they did to deprive Plaintiff of medical care. Any such application for leave to replead shall be filed as provided below.

## IV. CONCLUSION

For the foregoing reasons, the United States is substituted as the named Defendant for the FTCA claim, and Defendants' motion to dismiss the Complaint is GRANTED. If Plaintiff seeks leave to file an amended complaint, he shall file a letter application as described above on or before **March 22, 2019.**

The Clerk of Court is respectfully directed to close the motion at Docket Number 36 and to mail a copy of this Opinion and Order to pro se Plaintiff.

Dated: February 20, 2019
    New York, New York

                                          LORNA G. SCHOFIELD
                                        UNITED STATES DISTRICT JUDGE